UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
JAMES GALLAGHER,

                Plaintiff,

     – against –

MEDEIKON CORPORATION,

                Defendant.
-----------------------------------------------------------x

**MEMORANDUM & ORDER**

08-CV-535 (SLT) (ALC)

**TOWNES, United States District Judge:**

Plaintiff James Gallagher, a New York resident, commenced this diversity action on February 8, 2008, against Defendant Medeikon Corporation ("Medeikon"),[1] a New Jersey business incorporated in Delaware, to recover damages for breach of the terms of a $100,000 promissory note (the "Note"). Currently before the Court is Plaintiff's motion for default judgment, filed January 24, 2011. For the following reasons, the motion is granted in part and denied in part.

## I.   BACKGROUND

The Court presumes the parties' familiarity with the facts asserted in this case, as discussed in its September 30, 2009, Memorandum & Order. (Docket No. 27). The substance of the complaint is that on July 11, 2006, Medeikon provided Plaintiff with the Note under which Medeikon promised to pay Plaintiff $100,000 plus 20% simple interest at the beginning of each 30-day period thereafter. (Pl. Mot. Ex. A ¶1(a)). Additionally, full payment was to be made immediately upon written demand, which could occur no sooner than 90 days after the execution

---

[1] Plaintiff claims that Medeikon changed its name to Cardiovascular Solutions Inc. just days after the complaint in this case was filed, but did not inform the Court or Plaintiff of that fact, or that a sale of corporate assets was to take place, until last year. (Pl. Mot. ¶¶10, 11; Ex. C).

of the Note. (Id.). If Medeikon failed to repay the Note within 15 business days of the demand, interest would resume at the same rate of 20% at the beginning of each 30-day period. (Id.). The Note also provided that in the event of such a default, Medeikon agreed to pay, "in addition to the principal and interest . . . reasonable attorneys' fees and costs incurred by" Plaintiff. (Id. ¶ 3). According to the papers filed with the Court, Plaintiff noticed his demand in a letter dated November 13, 2006, (Pl. Mot. Ex. B), and Medeikon has never made payment, (id. ¶20).

The complaint was served on Medeikon on April 2, 2008. (Docket Nos. 3, 4). On April 18, 2008, defense counsel Melissa Chuderewicz, Esq., filed a notice of appearance and requested an extension of time to answer, which was granted. (Docket Nos. 5, 6). Ultimately, Medeikon filed a motion to dismiss for lack of personal jurisdiction, which this Court denied on September 30, 2009. (Docket No. 27). Three months later, defense counsel moved to withdraw, stating that since the motion to dismiss was denied, the firm had "not been able to contact Medeikon" and that Medeikon had "failed to pay legal fees for the services rendered." (Docket No. 32 at 1-2). On January 13, 2010, Magistrate Judge Andrew L. Carter held a hearing and granted defense counsel's motion to withdraw, directing Medeikon to retain new counsel within 30 days. On March 5 and 22, 2010, Medeikon failed to appear for telephone conferences before Judge Carter. Judge Carter observed that Medeikon had not retained new counsel and therefore permitted Plaintiff to file a motion for default judgment.

On December 8, 2010, Judge Carter issued an order to show cause as to why the action should not be dismissed, as there had been no activity for nearly nine months and Plaintiff had failed to move for entry of default. On January 24, 2011, Plaintiff noticed his motion for default judgment and the Clerk of Court filed an entry of default on January 31, 2010. (Docket Nos. 41-43). That motion is presently before the Court.

## II. DISCUSSION

### A. Default Judgment

Under Rule 55, entry of a default judgment typically takes place in two steps. First, the Clerk of Court enters the non-moving party's default, indicating that the party has "failed to plead or otherwise defend." Fed R. Civ. P. 55(a). Second, the moving party typically "appl[ies] to the court for a default judgment." Fed R. Civ. P. 55(b)(2). It is important to note that "[w]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). Still, the movant need only show "that the compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." Id. As to the amount of damages that may be assessed, it is within the court's discretion "to require an evidentiary hearing or to rely on detailed affidavits or documentary evidence in making this determination." Lyons P'ship, L.P. v. D & L Amusement & Entm't, Inc., 702 F. Supp. 2d 104, 111 (E.D.N.Y. 2010) (citing Fed. R. Civ. P. 55(b)(2)).

### B. Choice of Law Provision

In this case, the Note contains a choice of law provision selecting Delaware law. (See Pl. Mot. Ex. A ¶6 ("This Agreement shall be governed by and construed under the internal laws of the State of Delaware without reference to principles of conflict of law or choice of laws.")). A federal court sitting in diversity "applies the law of the forum state, including its choice-of-law rules, to determine the applicable substantive law." Manheim Auto. Fin. Servs., Inc. v. Fleet Funding Corp., No. 09-CV-4357 (NGG) (RER), 2010 WL 1692954, at *2 (E.D.N.Y. Mar. 22, 2010), adopted by, 2010 WL 1688565 (E.D.N.Y. Apr. 22, 2010) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941)). It is important to emphasize, however, that New

York's rule honoring parties' choice of law governs substantive, not procedural issues. Phillips v. Audio Active Ltd., 494 F.3d 378, 384-85 (2d Cir. 2007) (citing Woodling v. Garrett Corp., 813 F.2d 543, 551-52 (2d Cir. 1987)).

### C. Liability for Breach of Note

To establish a prima facie case for breach of contract under Delaware law, a plaintiff must show: "1) a contractual obligation; 2) a breach of that obligation by the defendant; and 3) a resulting damage to the plaintiff." Accelecare Wound Centers, Inc. v. Bank of New York, 08-CV-8351, 2009 WL 1227487, at *3 (S.D.N.Y. May 5, 2009) (quoting H-M Wexford LLC v. Encorp, Inc., 832 A.2d 129, 140 (Del. Ch. 2003)).

In this case, Plaintiff has established each necessary element. First, Medeikon became liable to Plaintiff upon executing and signing the Note on July 11, 2006. Second, Medeikon breached its obligation under the Note by failing to make payment within 15 days of receiving the written demand, dated November 13, 2006. Third, Plaintiff has been damaged by Medeikon in the amounts due under the Note. Plaintiff therefore has established that he is entitled to recover from Medeikon for breach of the Note. See, e.g., Benson v. Quicknowledge, Inc., No. 5:08-CV-1215 (GTS/DEP), 2010 WL 1930970, at *2 (N.D.N.Y. May 10, 2010) (applying Delaware law to breach of promissory note).

### D. Calculation of Damages

As an initial matter, "the damages recoverable by a plaintiff following a default judgment [are limited] to the type and quantity of damages demanded in the complaint." Ames v. STAT Fire Suppression, Inc., 227 F.R.D. 361, 362 (E.D.N.Y. 2005) (citing Fed. R. Civ. P. 54(c)). Rule 54(c) does not, however, "preclude an award of damages that accrued during the pendency of the action" and which "were explicitly requested in the complaint, and sufficiently established

by the affidavits submitted by plaintiff[]." Id. For that reason, Plaintiff's "request for interest and reasonable attorney's fees, in addition to its actual damages, may be awarded in an amount determined by the court." Gateway Bank, F.S.B. v. Ideal Mortg. Bankers, Ltd., No. CV 10-334 (JS) (ETB), 2010 WL 3199746, at *2 (E.D.N.Y. June 8, 2010), adopted, 2010 WL 3199743 (E.D.N.Y. Aug 12, 2010).

### 1. Unpaid Principal

The amount of money loaned by Plaintiff to Medeikon pursuant to the July 11, 2006, was $100,000. Accordingly, Plaintiff is awarded unpaid principal damages in that amount.

### 2. Interest and Late Charges

Under the Note's terms, Medeikon's failure to make payment within 15 days of a written demand would restart the accrual of interest at the same 20% rate for each 30-day period. Plaintiff gave notice in his November 13, 2006, letter, demanding full payment of principal and interest on the Note. The accrual clock therefore resumed in December 2006.

Plaintiff now moves this Court to award $1,000,000 in interest for the period December 2006 through February 2011. That figure is based upon 20% simple interest on the original $100,000 sum, accruing over 50 months. Plaintiff also seeks 20% in pre-judgment interest, though he does not specify whether the interest is to accrue monthly or annually.

It is worth noting that in this Circuit, "a corporation may only raise the defense of usury if the interest rate exceeds the criminal usury rate, 25%." Aaron v. Mattikow, 146 F. Supp. 2d 263, 265 (E.D.N.Y. 2001), aff'd, 61 Fed. Appx. 764 (2d Cir. 2003) (citing N.Y. Gen. Oblig. L. § 5-521); see also New York Penal Law § 190.40 ("A person is guilty of criminal usury in the second degree when . . . he knowingly charges. . . as interest on the loan or forbearance . . . at a rate exceeding twenty-five per centum per annum or the equivalent rate for a longer or shorter

period."). The Court is far from blind to the wide gulf between interest calculated at 25% per annum and interest calculated at 20% per month, as asserted by Plaintiff. Nevertheless, Medeikon has failed to answer the complaint, much less assert usury as a defense. The Court declines to apply that defense sua sponte.

Accordingly, Plaintiff is awarded interest in the amount of $1,000,000 through February 2011. As the date of this Order precedes the start of the next 30 day period, no further pre-judgment interest is to be awarded.

### 3. Post-Judgment Interest

28 U.S.C. § 1961 provides that interest is "allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). The purpose of post-judgment interest is to "compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant." Westinghouse Credit Corp. v. D'Urso, 371 F.3d 96, 101 (2d Cir. 2004) (quoting Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S. 827, 835-36 (1990)). Indeed, "[t]here is no question but that . . . post-judgment interest" in a civil district court case is "mandatory under § 1961." Id. at 100. Under that provision, "[s]uch interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment," 28 U.S.C. § 1961(a), and is to be "computed daily to the date of payment," 28 U.S.C. § 1961(b).

Accordingly, the Court awards Plaintiff post-judgment interest on its monetary award to be calculated pursuant to § 1961.

### E. Attorneys' Fees and Costs

As indicated above, New York law provides that "contractual choice of law clauses only apply to substantive issues; New York follows its own procedural rules." Manheim Auto. Fin. Servs., Inc., 2010 WL 1692954, at *6 (citations omitted). Delaware law "establishes a detailed procedure for computing attorneys' fees . . . when a lawsuit is based on a written instrument," such as a contract or note. Benson, 2010 WL 1930970, at *3 (citations omitted) (emphasis added). New York law therefore governs the procedural issue of attorneys' fees and costs in this action. Id.; Manheim Auto. Fin. Servs., Inc., 2010 WL 1692954, at *6.

Moreover, it is well-established that "any attorney . . . who applies for court-ordered compensation in this Circuit . . . must document the application with contemporaneous time records. These records should specify, for each attorney, the date, the hours expended, and the nature of the work done." New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983); see also Scott v. City of New York, 626 F.3d 130, 133 (2d Cir. 2010) ("Carey sets out unequivocally that absent unusual circumstances attorneys are required to submit contemporaneous records with their fee applications."). Indeed, applications that do not contain such supporting data "should normally be disallowed." Carey, 711 F.2d at 1154; see, e.g., Sack v. Lawton, No. 01 Civ. 285 (SHS), 2003 WL 22682043, at *7 (S.D.N.Y. Aug. 28, 2003).

In this case, the Note provides that Medeikon "agrees to pay, in addition to the principal and interest . . . , reasonable attorneys' fees and costs incurred by the Holder." (Pl. Mot. Ex. A ¶ 3). To that end, Plaintiff seeks to recover as attorneys' fees "a minimum of twenty percent" of the total principal and late charges as of February 2011 ($220,000) plus interest at a rate of 20% per month until the entry of judgment. Plaintiff also seeks $350 for unspecified costs.

7

Nevertheless, Plaintiff has failed to provide any contemporaneous billing records or related information. Accordingly, Plaintiff's request to recover attorneys' fees and costs is denied.

### III. CONCLUSION

For the foregoing reasons it is ordered that:

1. Plaintiff's motion for a default judgment is GRANTED;

2. The Clerk of Court shall enter judgment in favor of Plaintiff, as of the date of this order, in the total amount of $1,100,000 in damages, with post-judgment interest computed daily to the date of payment, pursuant to 28 U.S.C. § 1961; and

3. Plaintiff's request for attorneys' fees and costs is denied without prejudice.

**SO ORDERED.**

/SANDRA L. TOWNES
United States District Judge

Dated: February 28, 2011
Brooklyn, New York